*Caledonia,*
*February,*
*1815*

DAVID BROWN and others, Appellants,

*vs.*

ANNA BROWN, Appellee.

By the laws of this State, brothers and sisters of the half-blood inherit real estate, and take personal estate as next of kin to each other.

SAMUEL BROWN, late of Peacham, in the County of Caledonia, died intestate, leaving a widow, the Appellee, but no child, father or mother, or brother or sister of the whole blood; the appellants were brothers and sisters of the half-blood.

After the payment of debts there remained a surplus of said estate, both real and personal. The widow claimed the whole to be decreed to her for want of legal heirs, under the 73d Section of the Probate Act, by which it is among other things provided " That if such intestate, dying without heirs, leave a widow, the said Judge shall order, adjudge and decree to such widow the whole of such real and personal estate for ever, &c." By the 30th Section of the Probate Act, it is provided, " That if any person shall die intestate, after marriage, or, becoming of full age, without lawful issue, the father being alive; he shall be entitled to the whole estate of such intestate, unless he leave a widow; in which case, and also where no father be living at the time of the decease of such intestate, she shall be entitled to one half the real and personal estate for ever, after the payment of debts, &c."

The appellants, brothers and sisters of the intestate, of the half blood, claimed one moiety of the estate as next of kin to the intestate. The Judge of Probate decreed the whole of the estate to the widow, being of opinion that brothers and sisters of the half-blood, could not inherit or take as next of kin to each other. From which decree the brothers and sisters appealed to this Court.

*John Mattocks,* for the appellants.

*William Mattocks,* for the appellee.

CHIPMAN, Ch. J. delivered the opinion of the Court.

It certainly is a rule of the English common law, that brothers and sisters of the half-blood shall not inherit to each other—that, if a man die seised of an estate of inheritance, leaving a brother of the half-blood, but no heirs of the whole blood, the estate shall not go

to the brother of the half-blood, but shall escheat to the Lord, for <span style="float:right">*Caledonia,*</span> want of heirs.   This rule was derived from the Constitution of <span style="float:right">February, 1815.</span> Feuds, which limited the descent to the heirs of the whole blood of the first feudatory.   Where there were children, the eldest male <span style="float:right">D. Brown et al</span> took the whole real estate ; if there were no children, the estate ac- <span style="float:right">*vs.*</span> cording to the rules of descent by which the heir was ascertained, <span style="float:right">A. Brown.</span> often went to some remote relation, passing by those who were much nearer of kin.   In this State it is provided by statute, that the real estate shall descend to all the children, and their legal representatives, if any be dead.   And if the intestate have no child or children, at the time of his decease, such estate shall descend, equally to the next of kin, in equal degree, and those who represent them. And the father living is expressly placed in the first degree, agreeably to the civil law ; whereas by the common law the father could not inherit to his child.   By our law it is also provided that personal estate shall be distributed in the same manner to the next of kin ; so that by our law the real and personal estate go to the same persons ; whereas by the English law, they often took different directions.

In the Act for the settlement of testate and intestate estates, passed 8th March, 1787, are, among others, the following provisions— "And the remainder both of the real and personal estate, in proportion as aforesaid, to every of the brothers and sisters of the intestate, *of the whole blood,* and such as legally represent them : or, if there be no such kindred, then to the parent or parents of the intestate.   And if there be no parents, then in proportion as aforesaid, to every of the brothers and sisters *of the half-blood* of the intestate : but, if there be no parent, brother or sister, then in proportion as aforesaid, to every of the next of kin to the intestate in equal degree, and those who legally represent them : kindred of the whole blood to take in preference to kindred of the half-blood in the same degree."

The framers of this statute seem to have had in view, both the common law of descent, and the English statute of distributions, enlarging the common law regulating the descent of real estate, by rendering kindred of the half-blood capable of inheriting, and restraining the provisions of the statute of distributions in favor of the half-blood, by postponing them to kindred of the whole blood.

*Caledonia,*
February,
*1815.*

D. Brown
et al.
*vs.*
A. Brown.

Our present statute, passed on the 10th March, 1797, which regulates the descent of real estate, giving the personal estate to the same heirs, has adopted the general principles, and in many instances the expressions of the English statutes of the 22d and 23d of Charles II. commonly called the statute of distributions. The framers of this statute had the English statute in view, and the construction which had been given to that statute.

About five years after the passing of the English statute, this point was decided in the Court of Common Pleas in favour of the half-blood in the case Smith *vs.* Tracy, 1 Mod. 209—2 Mod. 204. A man died leaving issue by two venters, three sons by the first wife, and two daughters by the second. One of the brothers died, and the eldest surviving brother took administration, and the Judge of the Consistory Court ordered distribution to the sisters of the half-blood. The administrator prayed a prohibition, but the Judges of the Common Pleas were unanimously of opinion with the Judge of the Consistory Court, and refused a prohibition. It was afterwards settled in the case Crocker *vs.* Watts, upon appeal to the House of Lords, that those of the half-blood should have an equal share with those of the whole blood. Indeed the question had long been virtually decided, in the construction of the statutes of Ed. III. and Hen. VIII. directing the Ordinary to commit the administration of the effects of a deceased intestate to the next of kin. Upon these statutes it had long been settled, that the brothers and sisters of the half-blood, were equally entitled to administration with those of the whole blood.

The present case, however, does not involve the question whether the half-blood stand in the same degree of kindred as brothers of the whole blood, but whether they are at all akin to each other. They have, indeed, as it respects each other, but half the blood of the common stock from which we are to reckon in this case. But, whether two persons are of kin to each other, does not depend on the quantity of common blood, but on their actual derivation from the common stock. Second, third and fourth cousins, are as really of kin to each other as father and child, but more remote in degree. Viewed in this light, it is unnecessary to resort to precedents to support the claim of the appellants; common sense and common feelings are sufficient to decide against every authority short of a positive law.

The Court, therefore, reverse the decree of the Court of Probate *Caledonia,* in this case, and order that distribution be made of a moiety of the estate of the intestate, to and among the appellants according to law.